CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

1/5/2026

LAURA A. AUSTIN, CLERK
BY:  s/ J. LOPEZ
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

|  |  |
|---|---|
| IN RE SUBPOENA FOR DOCUMENTS TO SHEET METAL WORKERS' NATIONAL PENSION FUND | Case No. 3:26-mc-1_____ |

**BAYER AG'S MOTION TO QUASH SUBPOENA PURSUANT TO RULE 45(D)(3)**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

    A.    Bayer agrees to acquire Monsanto after performing due diligence. ........................................................................................................2

    B.    A securities-fraud action is filed against Bayer, and lead counsel in the Roundup MDL represent that discovery from Bayer is "not relevant to the personal injury cases." ...............................................3

    C.    Bayer produces documents in the Securities Action subject to a protective order, and is compelled to produce certain privileged materials subject to stringent protections.................................................4

    D.    After the Securities Action settles, the MDL Plaintiffs intervene to modify the Protective Order...................................................8

    E.    The MDL Plaintiffs subpoena the SMW Fund for all materials "produced, provided or disclosed" by Bayer and its current or former employees in the Securities Action, without limitation. ..............................9

JURISDICTION, VENUE, AND STANDING.............................................................10

ARGUMENT.......................................................................................................................11

    I.    The MDL Plaintiffs cannot establish that the entirety of Bayer's discovery record is relevant to the Roundup MDL ..................................11

    II.    The MDL Plaintiffs cannot establish that the discovery sought is proportional to the needs of the Roundup MDL ...............................13

    III.    The MDL Plaintiffs should not be permitted to compel disclosure of privileged materials .......................................................16

CONCLUSION....................................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Aronson* v. *McKesson HBOC, Inc.*,
   2005 WL 934331 (N.D. Cal. Mar. 31, 2005) ..............................................................................19

*Bittaker* v. *Woodford*,
   331 F.3d 715 (9th Cir. 2003) ....................................................................................................17

*Effective Expl., LLC* v. *Pennsylvania Land Holdings Co., LLC*,
   2015 WL 3507338 (W.D. Va. June 4, 2015) ..............................................................................16

*Eshelman* v. *Puma Biotechnology, Inc.*,
   2017 WL 5919625 (E.D. N.C. Nov. 30, 2017) ...........................................................................13

*Farrar* v. *Cessna Aircraft Co.*,
   2019 WL 418432 (S.D. W. Va. Feb. 1, 2019) ............................................................................10

*Hall* v. *Balt. Police Dep't*,
   2025 WL 509130 (D. Md. Feb. 13, 2025) ..................................................................................11

*In re: Bard IVC Filters Prods. Liab. Litig.*,
   2016 WL 537587 (D. Ariz. Feb. 11, 2016) ................................................................................19

*In re Pac. Pictures Corp.*,
   679 F.3d 1121 (9th Cir. 2012) ..................................................................................................18

*In re Subpoena Duces Tecum to AOL, LLC*,
   550 F. Supp. 2d 606 (E.D. Va. 2008) .......................................................................................13

*In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*,
   2016 WL 1071016 (E.D. Va. Mar. 17, 2016) ....................................................................... 14-15

*Mohawk Indus., Inc.* v. *Carpenter*,
   558 U.S. 100 (2009) .........................................................................................................18 n.8

*Nallapaty* v. *Nallapati*,
   2022 WL 1508885 (E.D. N.C. May 12, 2022) ..........................................................................13

*Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*,
   2024 WL 74928 (N.D. Cal. Jan. 5, 2024) .......................................................................... *passim*

*Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*,
   2025 WL 2380970 (N.D. Cal. Aug. 15, 2025) ................................................................... *passim*

*Singletary* v. *Sterling Transp. Co.*,
   289 F.R.D. 237 (E.D. Va. 2012) ...............................................................................................13

*Singleton* v. *Mazhari*,
  2025 WL 2712743 (D. Md. Sept. 23, 2025) ...............................................................11

*Transamerica Computer* v. *IBM*,
  573 F.2d 646 (9th Cir. 1978) ...................................................................................18

*United States* v. *de la Jara*,
  973 F.2d 746 (9th Cir. 1992) ...................................................................................18

*United States* v. *Idema*,
  118 F. App'x 740 (4th Cir. 2005) .............................................................................10

*Va. Dep't of Corrs.* v. *Jordan*,
  921 F.3d 180 (4th Cir. 2019) ......................................................................... *passim*

## **Rules**

Fed. R. Civ. P. 26(b) ...................................................................................................11

Fed. R. Civ. P. 26(c) ...................................................................................................16

Fed. R. Civ. P. 45(d) ............................................................................................ *passim*

Fed. R. Evid. 502(d) .................................................................................................5, 18

**INTRODUCTION**

Over the past decade, purchasers of Monsanto's popular herbicide Roundup have brought nearly 200,000 lawsuits alleging — without merit — that its active ingredient causes cancer. Those claims have spawned years of exhaustive discovery, during which Monsanto has produced millions of pages of documents. They have also been tested in dozens of trials, most of which Monsanto has won. Across that litigation, teams of lawyers have examined the record on Roundup repeatedly and in detail. Yet at no point did any plaintiff seek the pre-merger due-diligence materials prepared by Bayer when it acquired Monsanto in 2016 — because those documents are not pertinent.

Now, plaintiffs in a federal Roundup MDL have come to this District demanding access to those diligence documents. They do not, however, seek them from Bayer. Instead, they have issued a subpoena (the "Subpoena") to a locally headquartered pension fund, which obtained access to a repository of Bayer documents when it served as a co-lead plaintiff in a separate, now-settled securities-fraud action (the "Securities Action"). *See generally* Ex. 1.

The Subpoena should be quashed for multiple independent reasons.

*First*, the MDL Plaintiffs cannot carry their burden of showing that the Subpoena is narrowly tailored to the production of relevant documents. Tellingly, lead counsel in the same MDL have previously represented that the documents they now seek are "not relevant" to their clients' claims. Ex. 2 at 2. And even if Bayer's pre-merger diligence could somehow be relevant to the Roundup MDL, the Subpoena does not target those materials. Instead, it demands the wholesale re-production of *all* documents Bayer produced in the Securities Action — including vast swathes of sensitive corporate records unrelated to Roundup and addressing every aspect of the Monsanto acquisition. That overbreadth cannot be sustained under the Federal Rules or Fourth Circuit precedent.

*Second*, the Subpoena fails the Fourth Circuit's "demanding" proportionality test for third-party discovery. *Va. Dep't of Corrs.* v. *Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). Any marginal relevance to the MDL Plaintiffs is outweighed by the substantial burdens imposed on Bayer through the compelled disclosure of confidential business records and the intrusion on employee privacy interests.

*Finally*, the Subpoena must be quashed to the extent it seeks legal memoranda and related materials prepared by Bayer's lawyers in connection with the Monsanto diligence. Although Bayer was compelled to produce certain of those records in the Securities Action, the presiding court has since recognized that Bayer has "strong arguments [that they] are not admissible in future proceedings" because "they constitute privileged [documents] or [are] protected as opinion work product." *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, 2025 WL 2380970, at *8 (N.D. Cal. Aug. 15, 2025) ("*Protective Order Decision*").

Accordingly, as set forth in greater detail below, Bayer respectfully submits that the Subpoena should be quashed and the MDL Plaintiffs barred from obtaining Bayer's confidential and privileged documents.

## BACKGROUND

### A.    Bayer agrees to acquire Monsanto after performing due diligence.

In September 2016, Bayer agreed to acquire the agrochemical company Monsanto, following months of due diligence on all aspects of Monsanto's business. Among the topics of this pre-merger inquiry was a growing number of lawsuits brought against Monsanto by customers who alleged that they had developed cancer from exposure to glyphosate — the active ingredient in the herbicide Roundup.

Regulators in the United States and around the world have approved and reapproved glyphosate (and Roundup) for general use, and there is an extensive body of research supporting

its safety. Nevertheless, in March 2015, the International Agency for Research on Cancer released a monograph that characterized glyphosate as "probably carcinogenic to humans." The report prompted dozens of plaintiffs to file highly publicized lawsuits. By late 2016, over 50 Roundup cases were pending against Monsanto, with more being filed every month and discovery in full swing. In October 2016, the federal Roundup lawsuits were consolidated into a proceeding in the U.S. District Court for the Northern District of California (the "Roundup MDL"). *See* Transfer Order, *In re Roundup Prods. Liability Litig.*, MDL No. 2741 (J.P.M.L. Oct. 3, 2016), ECF No. 57.

In the months and years that followed, the MDL Plaintiffs pursued an exhaustive campaign of discovery, through which Monsanto produced millions of pages of documents and plaintiffs' counsel deposed dozens of Monsanto witnesses.[1] Bellwether trials followed in rapid succession. In August 2018, just months after Bayer closed its acquisition of Monsanto, a California Superior Court jury in the first Roundup case to reach trial ruled in favor of the plaintiff.[2] Monsanto suffered further trial losses in March and May 2019.[3] A boom in new lawsuits followed, with the volume of Roundup claims soaring to roughly 125,000, many consolidated in the Roundup MDL.

### B.    A securities-fraud action is filed against Bayer, and lead counsel in the Roundup MDL represent that discovery from Bayer is "not relevant to the personal injury cases."

Amid Monsanto's setbacks in the Roundup litigation, Bayer's share price fell sharply. On July 15, 2020, two pension funds filed suit in the Northern District of California, claiming securities fraud by Bayer and several of its current and former officers. *See generally* Complaint,

---

[1] *See* Joint Trial Exhibit List, *Hardeman* v. *Monsanto Co.*, No. 3:16-md-02741, ECF No. 2658-1 (N.D. Cal. Feb. 6, 2019) (listing witnesses and Bates numbers of Monsanto productions).

[2] *See* Verdict Form, *Johnson* v. *Monsanto Co.*, No. CGC-16-550128 (Cal. Super. Ct. Aug. 10, 2018).

[3] *Hardeman* v. *Monsanto Co.*, 997 F.3d 941, 950-52 (9th Cir. 2021) (discussing verdict); *Pilliod* v. *Monsanto Co.*, 67 Cal. App. 5th 591, 612 (Cal. Ct. App. 2021) (discussing verdict).

*City of Grand Rapids Ret. Sys.* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. July 15, 2020), ECF

No. 1.  Their pleadings alleged that, over a period running from May 2016 to March 2019, the

defendants misrepresented the risk posed by the Roundup litigation and the extent of Bayer's pre-

merger due diligence on that risk.  *Id.* ¶ 11.

Immediately after filing suit, the pension funds moved to assign the case to the judge who

presides over the Roundup MDL, citing "the substantially similar parties and events at issue in the

action" and the likelihood of "overlapping discovery."  Admin. Mot. at 2, *In re Roundup Prods.

Liability Litig.*, No. 3:16-md-02741 (N.D. Cal. July 16, 2020), ECF No. 11257.  The MDL

Plaintiffs filed a brief on that pending motion, in which they declined to take a position but

emphasized that the proceedings were "materially different" in key respects.  Ex. 2 at 2 (MDL Co-

Lead Counsel's Response, *In re Roundup Prods. Liability Litig.*, No. 3:16-md-02741 (N.D. Cal.

July 20, 2020), ECF No. 11289).  In that filing, the MDL Plaintiffs represented that they had "not

take[n] discovery of Bayer and its knowledge of the litigation risks posed by the Roundup litigation

and/or its due diligence about the carcinogenicity of glyphosate" because "[t]hat inquiry was not

relevant to the personal injury cases as against either Monsanto or Bayer."  *Id.*

Reassignment was denied, and the Securities Action instead remained with Chief Judge

Richard Seeborg.  *See* Order, *In re Roundup Prods. Liability Litig.*, No. 3:16-md-02741 (Aug. 10,

2020), ECF No. 11516.  Shortly afterward, the Sheet Metal Workers' National Pension Fund (the

"SMW Fund") was appointed as a co-lead plaintiff in the litigation.  Order, *City of Grand Rapids

Ret. Sys.* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Oct. 21, 2020), ECF No. 44.

**C.**      **Bayer produces documents in the Securities Action subject to a protective
         order, and is compelled to produce certain privileged materials subject to
         stringent protections.**

There followed five years of hard-fought litigation in the Securities Action.  After denying

dismissal on the pleadings, Judge Seeborg entered the Stipulated Confidentiality and Protective

Order (the "Protective Order"), which governs the confidential treatment of documents produced in the litigation. *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Oct. 6, 2022), ECF No. 138. The Protective Order adopted the anti-waiver safeguards of Fed. R. Evid. 502(d), including language providing that production in the Securities Action would not "constitute a waiver of . . . privilege or other protection from discovery . . . in any other federal or state proceeding." *Id.* § 11.3. The order also imposed an unusually complex, four-tier confidentiality framework, the product of months of negotiation aimed at accommodating Bayer's concerns about the disclosure of highly sensitive internal documents. *Id*. § 1.2 (permitting the designation of discovery materials as "Confidential," "Highly Confidential," "Highly Confidential – Attorneys' Eyes Only," and "Foreign Confidential Personal Data").

Under the Protective Order, documents could be designated "Highly Confidential – Attorneys' Eyes Only" only upon a determination that they were so "extremely sensitive" that "disclosure . . . to any Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." *Id.* § 2.9. Following production, dissemination of such documents was limited to the opposing party's outside counsel, experts, and professional vendors, as well as the court itself. Documents designated "Foreign Confidential Personal Data," meanwhile, were subject to lengthy and carefully calibrated requirements designed to ensure compliance with European data privacy law. *Id.* § 13. Under either classification, documents subject to the Protective Order could be used "only for prosecuting, defending, or attempting to settle" the Securities Action. *Id.* § 7.1.

The SMW Fund and its co-plaintiffs pursued extensive discovery from Bayer, ultimately serving 60 requests for production, 7 requests for admission, and 21 interrogatories. These

requests probed Bayer's pre-merger due diligence on the Roundup litigation, but also went far beyond that narrow topic, seeking:

- "[a]ll minutes, presentations, memoranda, and other documents discussed by or presented to or by" Bayer's two governing boards concerning "Bayer's acquisition of Monsanto" or "Bayer's due diligence concerning the Merger" writ large, Ex. 3 (Plaintiffs' First Set of Requests for Production) at Request No. 5;

- "[a]ll documents concerning a comparison of Bayer's acquisition of Monsanto with past Bayer acquisitions," *id.* at Request No. 6;

- "[a]ll documents concerning [Bayer's board chairman's] communications to either or both of Bayer's Boards concerning the analysis or examination of options for companies for Bayer to acquire," *id.* at Request No. 10;

- "[a]ll documents concerning [Bayer's then-current or former CEOs'] position[s] on, advocacy for, or commentary on Bayer's acquisition of Monsanto," *id.* at Request Nos. 11, 12;

- "[a]ll documents concerning the 'hold separate' order concerning the Merger issued in May 2018 by the U.S. Department of Justice," as part of the government's antitrust review of the transaction, *id.* at Request No. 19;

- "[a]ll documents concerning discussion of the trading price for Bayer securities, including Bayer ADRs [American Depositary Receipts], by any of Bayer's Boards, members of Bayer's Boards, or Bayer personnel responsible for investor relations or investor communications," *id.* at Request No. 45; and

- detailed information on the mechanics of trading in Bayer ADRs, *id.* at Request Nos. 47-57.

Bayer produced nearly 200,000 pages of highly sensitive corporate records and communications responsive to these requests, among others.

The securities plaintiffs also pushed to obtain memoranda, presentations, and legal analysis prepared by the Bayer lawyers who performed pre-merger diligence on the Roundup litigation, including a succession of legal memoranda analyzing the litigation risk and another series of legal memoranda summarizing the mental impressions and opinions of outside counsel who were retained to monitor the initial Roundup trial in anticipation of joining the defense. Bayer initially

produced these documents (the "Privileged Diligence Materials") in heavily redacted form, withholding all substantive legal opinions and work product.

Following Bayer's initial production, the securities plaintiffs argued that because Bayer had asserted that its employees' public statements were made in good-faith reliance on representations by the company's diligence lawyers, it could not fairly withhold unredacted production of the Privileged Diligence Materials. Bayer responded that it planned to rely solely on non-privileged communications concerning the operational details of due diligence, not any of the substantive legal advice provided. On December 1, 2023, the parties filed a joint letter seeking resolution of the dispute. *See generally* Joint Discovery Letter Brief, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Dec. 1, 2023), ECF No. 198.

On January 5, 2024, the magistrate judge overseeing discovery disputes in the Securities Action entered an order compelling production of the Privileged Diligence Materials, concluding that "denying Plaintiffs access to" those documents "would make it impossible for them to prove their case." *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, 2024 WL 74928, at *3 (N.D. Cal. Jan. 5, 2024) ("*Privilege Order*") (reasoning that to prove that the defendants made false statements about the adequacy of Bayer's due diligence, the plaintiffs needed "to see what Defendants saw and what Defendants thought about the Roundup Litigation"). Finding that "the information is sensitive," however, the magistrate judge concluded it was necessary to "devise a narrow method to address disclosure." *Id.* The court's order therefore modified the Protective Order to authorize Bayer to produce the materials to opposing counsel under the maximally restrictive "Attorneys' Eyes Only" designation. *Id.* Bayer complied with this order, producing the Privileged Diligence Materials with "Attorneys' Eyes Only" marking and subject both to the Protective Order's anti-waiver provision and its use restriction.

**D.** **After the Securities Action settles, the MDL Plaintiffs intervene to modify the Protective Order.**

Following fact depositions and a lengthy period of expert discovery, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Jan. 9, 2025), ECF No. 230, the parties announced on February 25, 2025, that they had reached a settlement in principle. *Id.*, ECF No. 244. The court immediately vacated the case schedule and ordered the parties to file a motion for preliminary approval of the settlement. *Id.*, ECF No. 245.

On June 23, 2025, counsel to the MDL Plaintiffs moved to intervene in the Securities Action. *See generally id.*, ECF No. 256. The goal of this intervention was narrow — to modify the Protective Order, so that it would not bar plaintiffs in Roundup lawsuits from seeking discovery of the documents and testimony provided by Bayer in the Securities Action. Bayer opposed on several grounds, including counsel's failure to make a required showing that modification would avert duplicative discovery in Roundup litigation. *See generally id.*, ECF No. 262. In addition, Bayer argued that it would be prejudiced if the court permitted broader access to the Privileged Diligence Materials, because the magistrate judge's narrow order did not permit disclosure of those documents beyond the Securities Action itself. *Id.* at 10, 14-15.

On August 15, 2025, the court permitted intervention and granted in relevant part the requested modification of the Protective Order. *Protective Order Decision*, 2025 WL 2380970, at *9-10. Without resolving the "ultimate discoverability" of Bayer's documents in the Roundup MDL, Judge Seeborg concluded that modification was justified because certain categories of documents produced by Bayer were "potentially relevant" to issues in that consolidated proceeding. *Id.* at *6-7. Addressing the Privileged Diligence Materials, Judge Seeborg acknowledged that "Bayer has strong arguments th[o]se documents . . . are not admissible in future proceedings" because "they constitute privileged [documents] or [are] protected as opinion work

- 8 -

product." *Id.* at *8. Even so, despite recognizing that Bayer's production was subject to only a "narrow finding of implied waiver for the purposes of" the Securities Action, Judge Seeborg concluded that Bayer would not be prejudiced by modification of the Protective Order because it would "still [be] able to assert [its] privilege in future proceedings." *Id.* at *4.

On November 13, 2025, the parties submitted a proposed order implementing the *Protective Order Decision*. *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Nov. 13, 2025), ECF No. 281-1. As entered by the Court, this modification provides that the Protective Order "shall not bar disclosing or producing" Bayer's production to the MDL Plaintiffs "in response to a subpoena or discovery request" issued in the Roundup MDL, subject to compliance with the terms of the Protective Order as otherwise modified. Order, Ex. A § 15.3, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. Nov. 17, 2025), ECF No. 282. Among other provisos, the parties agreed that the amendment neither modified the magistrate judge's decision on the Privileged Diligence Materials nor resolved "any potential waiver of the attorney-client privilege, work product doctrine, or other applicable privilege by Defendants." *Id.* § 15.10.

E.    **The MDL Plaintiffs subpoena the SMW Fund for all materials "produced, provided or disclosed" by Bayer and its current or former employees in the Securities Action, without limitation.**

On November 18, 2025, Plaintiffs issued a subpoena to the SMW Fund. The Subpoena demands essentially the entire litigation and discovery record of the Securities Action, including:

> 1.    All Documents produced, provided, or disclosed by the Bayer Defendants to You[4] in connection with the Securities Action.

---

[4] The Subpoena defines "You" to include "Sheet Metal Workers' National Pension Fund and its successors and assigns, and any of its subsidiaries or former entities, or any other parent, affiliate, subsidiary, division or entity and the employees, representatives, independent

2.    All interrogatory responses produced, provided, or disclosed by the Bayer Defendants to You in connection with the Securities Action.

3.    All responses to requests for admission produced, provided, or disclosed by the Bayer Defendants to You in connection with the Securities Action.

4.    Complete copies of all transcripts and recordings of depositions taken of current or former Bayer and/or Monsanto employees, officers, directors, representatives, agents, experts, or other witnesses in connection with the Securities Action.

5.    All Documents, including exhibits, associated with the deposition transcripts and recordings referenced in Request No. 4.

Ex. 1, Att. A at 3.  The Subpoena would require the production of over 200,000 pages of Bayer documents, 7 expert reports, and the transcripts, recordings, and exhibits from 15 depositions.

The Subpoena would compel compliance at an address in this District, *see* Ex. 1 at 1, with a return date of January 5, 2026, *see* Ex. 4 (correspondence from MDL Plaintiffs' counsel amending return date to January 5, 2026).

**JURISDICTION, VENUE, AND STANDING**

Under Fed. R. Civ. P. 45(d)(3)(A) and (B), a motion to quash or modify a subpoena must be brought in "the court for the district where compliance is required." *Id.*  Thus, because the Subpoena compels compliance in this District, this Court is the appropriate forum to resolve Bayer's challenge.  Moreover, Bayer has standing to seek the Court's protection because it "has a personal right or privilege in the information sought by" the MDL Plaintiffs — Bayer's own confidential and privileged documents.  *Farrar* v. *Cessna Aircraft Co.*, 2019 WL 418432, at *3 (S.D. W. Va. Feb. 1, 2019) (citing *United States* v. *Idema*, 118 F. App'x 740, 744 (4th Cir. 2005)).

---

contractors, investigators, consultants, or agents, whether present or former, including attorneys and accountants, of same."  Ex. 1, Att. A at 1.

## ARGUMENT

Third-party discovery is subject to "an even more demanding and sensitive inquiry than the one governing discovery generally," *Va. Dep't of Corrs.* v. *Jordan*, 921 F.3d 180, 189 (4th Cir. 2019), compelling courts to "exercise greater vigilance and scrutiny," *Hall* v. *Balt. Police Dep't*, 2025 WL 509130, at *5 (D. Md. Feb. 13, 2025). As a threshold matter, this framework requires that the materials sought be "relevant to [a] party's claim or defense" and non-privileged. *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1)); Fed. R. Civ. P. 45(d)(3)(A)(iii). In addition to satisfying those basic prerequisites, a valid subpoena must also be tailored to ensure it seeks discovery "proportional to the needs of the case" and does not "subject[] a person to undue burden." *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1) and 45(d)(3)(A)(iv)).

The Subpoena fails at every step of this analysis. Plaintiffs cannot sustain their "burden of establishing relevance and proportionality," *Singleton* v. *Mazhari*, 2025 WL 2712743, at *4 (D. Md. Sept. 23, 2025), because their blunderbuss demands for Bayer's documents and testimony are not directed to any identified overlap between the Roundup MDL and the Securities Action. And even if the Subpoena were otherwise viable, it could not compel production of the Privileged Diligence Materials, which continue to be shielded by the attorney-client privilege and work-product protection. Bayer respectfully requests that the Court quash the Subpoena.

I.     **The MDL Plaintiffs cannot establish that the entirety of Bayer's discovery record is relevant to the Roundup MDL**

In prior submissions, the MDL Plaintiffs have argued that "documents and testimony bearing on Bayer's due diligence into Monsanto and both company's assessments of the potential litigation exposure" are relevant to the Roundup MDL because they bear upon "Monsanto and Bayer's knowledge, motives, and assessment of the exposure associated with potential Roundup litigation." Mot. to Intervene at 14-15, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*,

- 11 -

No. 3:20-cv-04737 (N.D. Cal. June 23, 2025), ECF No. 256.  That claim is dubious, at best — Bayer's knowledge and culpability are not at issue in the Roundup MDL, while Monsanto's knowledge and culpability were not a topic of discovery in the Securities Action.  Moreover, the MDL Plaintiffs' position runs counter to their prior concession that "discovery of Bayer and its knowledge of the litigation risks posed by the Roundup litigation and/or its due diligence . . . prior to its purchase of Monsanto" is "not relevant" to the Roundup MDL.  Ex. 2 at 2.

Regardless, even if the MDL Plaintiffs could show that *some* of the documents produced by Bayer are relevant to claims and defenses in the Roundup MDL, the Subpoena would still be indefensible, because the MDL Plaintiffs did not target their requests at those documents.  Plaintiffs instead requested every scrap of paper produced or "provided" by Bayer to the SMW Fund in connection with the Securities Action, together with every syllable spoken by every one of Bayer's lay and expert witnesses on any topic.  This sweeps far beyond the stated justification for the Subpoena.  As outlined above, Bayer's productions included volumes of board and C-suite documents analyzing the business logic of the Monsanto acquisition, detailing plans for the integration of the companies, and discussing the factors behind Bayer's share price movement, *see supra* at 6 — highly sensitive documents that bear no relationship to any matters at issue in the Roundup MDL.[5]

This overbreadth is fatal.  As the Fourth Circuit has held, "[a] nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it."  *Jordan*, 921 F.3d at 190.  Courts in this Circuit routinely quash

---

[5] Indeed, a literal reading of the Subpoena would also require production of Bayer's confidential briefing from the parties' settlement mediations and every draft of the parties' settlement agreement, all documents that were "provided to" the SMW Fund "in connection with the Securities Action."

subpoenas that fail to "limit the [documents] requested to those containing subject matter relevant to the underlying action." *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008); *see also Singletary* v. *Sterling Transp. Co.*, 289 F.R.D. 237, 241-42 (E.D. Va. 2012) (same); *Nallapaty* v. *Nallapati*, 2022 WL 1508885, at *5 (E.D. N.C. May 12, 2022) (quashing subpoena request that "contain[ed] no limitation on the temporal scope or the subject matter of the documents or communications sought and, thus, may include documents or communications that have no bearing whatsoever on the issues in this case").

The Eastern District of North Carolina's decision in *Eshelman* v. *Puma Biotechnology, Inc.*, 2017 WL 5919625 (E.D. N.C. Nov. 30, 2017), is illustrative on this point. In that case, the requesting party likewise sought re-production of all documents produced in a prior lawsuit, without any attempt to "tailor[] to the claims at issue" by "limit[ing] the documents to the subject matter relevant to th[ose] claims." *Id.* at *8. This "fishing expedition" was rejected because "wholly irrelevant documents could be produced if the subpoena [were] not quashed." *Id.* So too here, where the Subpoena seeks to transplant, root and branch, the discovery record of a securities-fraud action into largely unrelated product-liability litigation.

## II.     The MDL Plaintiffs cannot establish that the discovery sought is proportional to the needs of the Roundup MDL

Even if the MDL Plaintiffs could establish relevance, the Subpoena would still be improper because its requests are disproportionate to the needs of the Roundup MDL. "A more demanding variant of the proportionality analysis . . . applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified." *Jordan*, 921 F.3d at 189. Under this standard, "[t]he information sought must *likely* (not just theoretically) have marginal benefit in litigating important issues," by "offer[ing] some value over and above what the requesting party already has." *Id.* That benefit must then be

- 13 -

weighed against the burdens of compliance, which include not just the "dollars-and-cents cost" of document production but also the harm from "invading privacy or confidentiality interests" and the burdens that arise from "overbreadth — that is, when [a subpoena] seeks information beyond what the requesting party reasonably requires." *Id*. at 189-90.  In connection with this balancing inquiry, the Fourth Circuit has directed courts to "consider what information is available to the requesting party from other sources," including "other third parties that would be more logical targets for the subpoena." *Id*. at 189.

To begin, the MDL Plaintiffs have failed to establish that Bayer's documents will offer "value over and above what [they] already ha[ve]." *Id*.  The Roundup litigation has been ongoing for more than a decade, through tens of thousands of cases and dozens of trials.  Through all of that, the MDL Plaintiffs cannot identify any instance where any Roundup plaintiff has sought access to the documents at issue.  *See* Proposed Intervenors' Reply at 5 n.3, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. July 25, 2025), ECF No. 263 (conceding that the MDL Plaintiffs have never before attempted to seek Bayer's documents).  That inaction speaks volumes.  Roundup litigants have instead sought discovery concerning Monsanto's knowledge and alleged culpability from the obvious target — Monsanto.[6]  It is a mystery how Bayer's documents could shed additional light on the inner workings of what was then a wholly independent corporation.

Furthermore, any makeweight benefit from this tangential discovery must be weighed against the obvious burdens.  These include the overbreadth discussed above, *see supra* Point I, which would be enough by itself to render the Subpoena disproportionate.  *See, e.g., In re*

---

[6] Joint Trial Exhibit List, *Hardeman* v. *Monsanto Co.*, No. 3:16-MD-02741, ECF No. 2658-1 (N.D. Cal. Feb. 6, 2019) (listing hundreds of exhibits as "[r]elevant to Monsanto's knowledge").

*Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, 2016 WL 1071016, at *5 (E.D. Va. Mar. 17, 2016) (quashing subpoena that sought all documents produced in collateral litigation, noting that overbroad subpoenas "create[] an undue burden because [they] necessarily impose[] greater hardship than is necessary to obtain proper discovery"). Furthermore, even if the Subpoena had been appropriately targeted, its enforcement would nevertheless lead to the dissemination of volumes of Bayer's most sensitive corporate documents to tens of thousands of litigants in the 4,500 Roundup MDL cases now pending. The harm from broadcasting this confidential information is hardly theoretical: Bayer's production provides a blueprint for how the company evaluates merger targets and approaches strategic negotiations, the exposure of which would disadvantage the company in future transactions.

And beyond the direct prejudice to Bayer, the Subpoena would also trample the privacy interests of its employees. In the Securities Action, three former Bayer employees voluntarily submitted to depositions overseas in reliance on the terms of the Protective Order, and a fourth was *compelled* to testify in a German court subject to the same confidentiality provisions. *See* Letter of Request at 9, *Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer AG*, No. 3:20-cv-04737 (N.D. Cal. June 10, 2024), ECF No. 214-1 (discussing and appending Protective Order). Broader disclosure of those employees' testimony would eviscerate their reliance on the Protective Order — and worse still would betray confidentiality assurances made to the German government pursuant to international treaty.

Finally, Plaintiffs have failed to establish any need for obtaining *Bayer*'s records from the *SMW Fund*. If information about Bayer's due diligence were relevant — and it is not— the "more logical target[]" for such discovery would be Bayer itself. Where, as here, a party seeks a third-party's confidential commercial information, Rule 45 authorizes quashal absent a showing of

"substantial need . . . that cannot be otherwise met without undue hardship."  Fed. R. Civ. P. 45(d)(3)(B)(i), (C)(i).  The MDL Plaintiffs cannot carry that burden here, where they have concededly made "no attempt to gather th[e requested] information from" Bayer itself.  *Effective Expl., LLC* v. *Pennsylvania Land Holdings Co., LLC*, 2015 WL 3507338, at *3 (W.D. Va. June 4, 2015).

Accordingly, the Subpoena must also be quashed because any *de minimis* benefit it might achieve is swamped by the burdens it will unavoidably impose.

**III.    The MDL Plaintiffs should not be permitted to compel disclosure of privileged materials**

If the Subpoena is not otherwise quashed, it should be limited to the extent it would compel the production of documents protected by the attorney-client privilege and the work-product protection.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).  Bayer Corp. and the MDL Plaintiffs are presently discussing the proper procedure for submitting this issue in the Roundup MDL, where Bayer Corp. plans to seek a Rule 26(c) protective order to prevent the invasion of its joint privilege.  Bayer respectfully submits that it would be more efficient for the Northern District of California to resolve this question of privilege — which turns on the interpretation of a decision from that District pursuant to Ninth Circuit law — and therefore requests that this Court defer judgment on the matter.[7]  However, if the Court takes up the issue, it should bar production of the Privileged Diligence Materials, including any documents in the SMW Fund's possession, custody, or control that are derived from or refer to those materials.

---

[7] It is also unclear whether the Privileged Diligence Materials may properly be obtained from the SMW Fund, insofar as the documents were produced on an "Attorneys' Eyes Only" basis that restricted access to the fund's outside counsel.  While the Subpoena purports to compel the fund to produce documents in the possession of its "counsel," Ex. 1, Att. A at 1, the Protective Order bars outside counsel from providing the designated materials to SMW Fund for any reason. Should the Court deny quashal, Bayer reserves the right to challenge any such production as a violation of the Protective Order.

As recognized by Judge Seeborg in the Securities Action itself, Bayer has "strong arguments" against the MDL Plaintiffs' request for access to the Privileged Diligence Materials, "otherwise-privileged documents that Bayer was compelled to produce after a finding of implied waiver." *Protective Order Decision*, 2025 WL 2380970, at *4, 8. This is because the court's "narrow finding of implied waiver for purposes of" the Securities Action was issued under Ninth Circuit law, which "requir[es]" that such implied waivers "be 'closely tailored . . . to the needs of the opposing party in litigating the claim in question.'" *Id.* at *8 (quoting *Bittaker* v. *Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); alterations omitted). "Under th[at] principle, where 'a party complies with the court's conditions and turns over privileged materials, it is entitled to rely on the contours of the waiver the court imposes.'" *Protective Order Decision*, at *8 (quoting *Bittaker*, 331 F.3d at 721).

Bayer was compelled to disclose the Privileged Diligence Materials in the Securities Action based on a finding that the securities plaintiffs could not fairly pursue their claims without access to those records. That logic does not extend to the MDL Plaintiffs, who require no such access. In compelling disclosure, moreover, the magistrate judge recognized the extraordinary "sensitivity" of those documents, and the corresponding need to "devise a narrow method to address disclosure." *Privilege Order*, 2024 WL 74928, at *3. Accordingly, as set out above, the magistrate judge's order specifically authorized Bayer to produce the documents under an "Attorneys' Eyes Only" designation, which imposed three significant limits on the order's scope and effect: (1) access was restricted to opposing counsel, their advisors and — should the matter have proceeded — the court itself, Protective Order § 7.4; (2) use of the documents was restricted to the Securities Action, *id.* § 7.1; and (3) disclosure would not "constitute a waiver of . . . privilege

- 17 -

or other protection from discovery . . . in any other federal or state proceeding," assuring Bayer that it would be shielded to the outer limit of Fed. R. Evid. 502(d), *id.* § 11.3.

Bayer produced the documents in reliance on those protections, which were tailored to ensure that waiver was restricted to the needs of the Securities Action.[8] This limited and court-ordered disclosure did not "automatically waive the attorney-client privilege" in any other forum. *In re Pac. Pictures Corp.*, 679 F.3d 1121, 1130 (9th Cir. 2012) (distinguishing between the consequences of voluntary and compelled disclosure for the waiver of the attorney-client privilege); *United States* v. *de la Jara*, 973 F.2d 746, 749 (9th Cir. 1992) ("[A] party does not waive the attorney-client privilege for documents which he is compelled to produce" (quoting *Transamerica Computer* v. *IBM*, 573 F.2d 646, 651 (9th Cir. 1978)).). Indeed, a contrary rule would provide a roadmap for future invasions of the attorney-client privilege — inviting plaintiffs to foment securities-fraud litigation whenever an acquired company faces pending mass-tort claims, to force the acquiror into a Hobson's choice between defending its statements on due diligence and preserving the confidentiality of its lawyers' substantive legal advice.

In addition, separate and apart from the attorney-client privilege, the Privileged Diligence Materials also continue to be protected from broader disclosure because they are opinion work product — including memoranda that detailed the mental impressions and opinions of litigation

---

[8] In the *Protective Order Decision*, Judge Seeborg reasoned that Bayer "did not 'agree' to produce these documents based on the Court's assurances," because it was "subject to an adverse discovery ruling" that compelled disclosure. *Protective Order Decision*, 2025 WL 2380970, at *8. Respectfully, this misconstrues Bayer's procedural options in response to the magistrate judge's order. As the Supreme Court has recognized, a "long-recognized option" for parties in Bayer's position is "to defy a disclosure order and incur court-imposed sanctions" or a contempt finding, permitting post-judgment or interlocutory review "without having to reveal its privileged information." *Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 111 (2009). Bayer chose to refrain from that course in reliance on the narrow contours of the magistrate judge's decision and the Protective Order's anti-waiver provisions, reliance that would be upended by broader disclosure to the MDL Plaintiffs.

counsel in connection with pending litigation against a soon-to-be subsidiary of Bayer.  Applying

Ninth Circuit law, "[c]ourts have been willing to preserve a document's work product protection

where an earlier disclosure of the document was compelled." *In re: Bard IVC Filters Prods. Liab.

Litig.*, 2016 WL 537587, at \*8 (D. Ariz. Feb. 11, 2016).  And "[f]airness is not a consideration . . .

where the issue is whether disclosure of work product to one party waives protection of that

material to other adversaries." *Aronson* v. *McKesson HBOC, Inc.*, 2005 WL 934331, at \*10 (N.D.

Cal. Mar. 31, 2005).

As such, because the Privileged Diligence Materials remain subject to the attorney-client

privilege and work-product protection, the MDL Plaintiffs should not be permitted to seek their

production.

### CONCLUSION

For the reasons set forth above, the Court should quash the Subpoena.


Dated: January 5, 2026     Respectfully submitted,

/s/ *Kevin S. Elliker*
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email:  kelliker@Hunton.com

*Counsel for Bayer AG*

**CERTIFICATE OF SERVICE**

I hereby certify that on the January 5, 2026, copies of Bayer AG's Motion to Quash Subpoena Pursuant to Rule 45(d)(3) and its attached exhibits were served via electronic mail to the following parties through their respective counsel:

Benjamin Jackson
COHEN MILSTEIN SELLERS & TOLL PLLC
bjackson@cohenmilstein.com
*Counsel for Subpoenaed Party Sheet Metal Workers' National Pension Fund*

Robert J. Quigley
WEITZ & LUXENBERG P.C.
rquigley@weitzlux.com
*Counsel for Subpoenaing Party MDL Plaintiffs*

/s/ *Kevin S. Elliker*
Kevin S. Elliker (VSB No. 87498)
HUNTON ANDREWS KURTH LLP
951 E. Byrd St
Richmond, VA 23219
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: kelliker@Hunton.com

*Counsel for Bayer AG*